## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

JERRY FUENTEZ,                     )
                                   )
                  Plaintiff,       )
                                   )
v.                                 )          No. CIV 11-226-RAW-SPS
                                   )
SADA JONES and                     )          FILED
JOHN WISEMAN,                      )
                                   )          SEP 18 20..
                  Defendants.      )
                                              WILLIAM ... ......
### OPINION AND ORDER                         Clerk, U.S. D... .
                                              By_____
                                                   Deputy Clerk

This action is before the court on the defendants' motion to dismiss. The court has before it for consideration plaintiff's complaint, the defendants' motion, plaintiff's response, and a special report prepared at the direction of the court by the Special Report Coordinator for Corrections Corporation of America and Davis Correctional Facility, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Davis Correctional Facility (DCF) in Holdenville, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking equitable relief for alleged constitutional violations during his incarceration at DCF. The defendants are DCF Unit Manager Sada Jones and DCF Security Officer Sgt. John Wiseman.

Plaintiff alleges the defendants were deliberately indifferent to his safety when they moved another inmate into his cell. Plaintiff claims he told Defendant Wiseman he did not want to live with the other inmate. Wiseman, however, told plaintiff that Defendant Jones had advised him that if an inmate refused a new cellmate, the refusing inmate would be taken to lockup and issued a misconduct for disobedience to a direct order or for refusing housing. During the course of the move, Correctional Officer Mowers allegedly mentioned that the inmate being moved to plaintiff's cell should not be on the pod, because there was an institutional separatee between the new inmate and another inmate on the pod. The move into plaintiff's cell was made anyway, and plaintiff alleges that on June 28, 2010, he was restrained by handcuffs when his new cellmate attacked him with a knife, slashing and

stabbing him six times and requiring 200 stitches to close the wounds. He requests equitable relief in the form of a single cell and transfer to another facility.

The defendants allege plaintiff has failed to exhaust the administrative remedies for his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff (RTS). If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

The contract between DOC and CCA/DCF further requires DCF to maintain a grievance policy through which the inmates can address issues pertaining to their confinement at DCF that are not necessarily applicable to the DOC, such as inmate property or staff issues. CCA/DCF Grievance Policy 14-5 also requires an inmate first to attempt resolution of an issue through informal procedures before filing a formal grievance, and sets forth procedures and deadlines for appealing the decision of a formal or emergency grievance.

According to the special report, plaintiff was assaulted by his cellmate with a weapon

2

on June 28, 2010, while Corrections Officers Joiner and Lee were taking inmates out to recreation. While plaintiff was having restraints applied in his cell, his cellmate began cutting him. Officers Joiner and Lee opened the door, because plaintiff was saying, "He's getting me. He's getting me." The officers noticed blood around plaintiff's stomach area, and Officer Joiner saw a gray object that was about three inches long. Officer Lee called a medical emergency, and plaintiff was put in a strip cage. The medical staff arrived promptly and stopped the bleeding. Plaintiff then was escorted to the medical unit where he was treated for numerous superficial wounds. The two inmates and the cell were searched, but no weapon was found. The incident was categorized as a Priority II, the lowest priority level, as an inmate-on-inmate weapon assault that did not require immediate outside medical treatment.

On August 10, 2010, plaintiff filed Emergency Grievance No. 2010-312, alleging he sent a Request to Staff to Defendant Sada Jones on July 2, 2010. The grievance requested a single cell housing assignment or to be transferred to a medium security facility, such as Joseph Harp, Lexington, or James Crabtree, for his safety. The August 11, 2010, response from the Grievance Coordinator advised that plaintiff was moved to Fox Bravo Unit pending investigation, and he would be assigned appropriate housing after the investigation was completed. Single cell housing, however, is not available at DCF. Plaintiff's signature indicating his receipt of the decision was dated August 11, 2010.

Plaintiff appealed the grievance response on September 3, 2010, complaining that he had not received any equitable relief, there were no single cells at the facility, and he had not been transferred to one of the requested facilities. The appeal was returned with the following comment from the Warden's Secretary:

> If an inmate/resident is not satisfied with the decision of a formal or emergency grievance, the inmate/resident may complete the appeal section of the 14-5B and resubmit the grievance. The inmate/resident must file the appeal within five (5) calendar days of the response date listed on the 14-5B Inmate/Resident grievance form. You signed the grievance on 08/11/2010 and I received the Appeal on 09/03/2010. You are out of time.

*See* Docket No. 12-4 at 2-3. According to the special report, plaintiff did not pursue further

3

administrative remedies. To pursue additional appeal procedures, the final appeal must be submitted to the Administrative Review Authority of the Department of Corrections. *See* Docket No. 12-5 at 12.

Plaintiff alleges in his response to the motion that after filing the Emergency Grievance, he was taken to lock-up in the Fox Bravo Unit where he received and signed for the response to his grievance. After completing the appeal portion of the grievance form, he placed it in a sealed envelope and sent it to the Warden's Secretary. On September 3, 2010, he received the returned appeal that stated it was untimely. Plaintiff claims other inmates also have complained about misplaced mail.

Plaintiff further asserts that on September 14, 2010, he submitted a Request to Staff to the Warden's Secretary, claiming he had submitted his appeal on time, but a stack of undelivered mail later was found and turned in by a corrections officer. He asked to have his appeal considered, but the response stated there was no mailbox rule for the submission of grievances, and the documents must be received in the appropriate office within the required time frame. *See* Docket No. 17 at 26. The court finds that plaintiff's attempts to have his appeal reconsidered through this method does not excuse his failure to follow the procedures for exhaustion of administrative remedies.

**ACCORDINGLY,** the defendants' motion to dismiss [Docket No. 13] is GRANTED, and this action is, in all respects, DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

**IT IS SO ORDERED** this ___18th___ day of September 2012.

**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**

4